We'll move now to Case Number 4, Appeal 18-3403, Tristana Hunt v. Wal-Mart Stores, Inc. We'll move now to Case Number 4, Appeal 18-3403, Tristana Hunt v. Wal-Mart Stores, Inc. Good morning, Your Honors. I am Julie Herrera, and I represent the appellant, the plaintiff, in the underlying case. This case arose under Title VII of the Civil Rights Act of 1964 to remedy discrimination on the basis of sex. This is a sexual harassment case. We filed this appeal because the lower court entered summary judgment for Wal-Mart. That summary judgment was entered based on the Farragher-Ellerth defense. We ask that you reverse that decision and remand this case for trial. This case is primarily about reasonableness and who gets to decide it. To succeed on summary judgment based on the Farragher-Ellerth defense, Wal-Mart had to establish beyond question that it acted reasonably and Hunt unreasonably. Wal-Mart failed to do this. Under the standard announced in the companion cases, Farragher and Ellerth, Wal-Mart is liable for harassment committed by its supervisors against their subordinates unless it can prove an affirmative defense. The burden is on Wal-Mart to prove that it had in place a system where it exercised reasonable care to prevent and correct promptly sexual harassment and that the plaintiff failed unreasonably to take advantage of that system. As you can see, there are many parts to the affirmative defense. A jury could find that any number of those things has not been proven. And if the jury so found the affirmative defense would not be available, and liability would go to Wal-Mart. Are there other alternative approaches to how Wal-Mart could have investigated or handled the matter given the information that Ms. Hunt gave them? I'm sorry, could you repeat that? Could Wal-Mart have done something differently with regard to the investigation? Are there alternatives that Wal-Mart could have employed given the amount of information that Ms. Hunt gave them? Indeed, and the jury could find that as an initial matter, the investigation really did not happen. Tristana Hunt came in after her shift at 7 a.m. and made a written report to the store manager. She was not interviewed by that store manager. All that we have in the record is that written report. There's no indication that the store manager interviewed her at all. We have interview notes from when he interviewed Daniel Watson, the harasser, eight days later. And those notes show what he asked of Daniel Watson and what Daniel Watson's responses were. And no such investigation, no such interview happened for Tristana Hunt as an initial matter. But didn't he begin the investigation immediately, the supervisor? He comes out at 7 a.m., she gives the complaint. Doesn't he begin that investigation immediately? I don't believe it was immediately. So it was eight days later that he questioned Daniel Watson. Eight days later than what? After her written complaint. Okay. Well, that was her initial complaint. What happened before that? What happened before her initial complaint? Before her initial complaint, she had been being harassed by Daniel Watson for months. For months. But she didn't. All I'm looking at is when did Walmart first know about this? Well, it depends on what you mean by this. So Walmart first knew about Tristana Hunt's written complaint in September of 2013. But the issue here is that Tristana Hunt never should have been put into this position. Daniel Watson should not have been a supervisor on the overnight shift because he had previously sexually harassed someone else. Okay. Well, that's a different question, I guess. So several months prior, Daniel Watson had engaged in sexual harassment of a woman named two written reports to Walmart. There was an additional witness who turned in a report about it as well, an Erica Redmond, a personnel coordinator. So before all of this happened to Tristana Hunt, someone else had complained. And that person had complained that Daniel Watson, her supervisor, had closed the door behind her and him in a room, closed the window behind them as well, and talked to her about, don't you like me? Don't you like me? Don't you like me? In fact, touching her. Touching her on the arm. And she told him, stop touching me. He didn't stop. Now, does Hunt identify these witnesses to Turner? Or does, are you, or is your point that Walmart must have known about them because there were independent reports of that? Independent reports. So these were on file with Walmart prior to any of this happening with Tristana Hunt. So these were written submissions made by Toyanna Campbell and witnesses to Walmart. So Walmart doesn't dispute this, that they had written notice that Daniel Watson had sexually harassed someone else. She had, in her report, she says that she had to yell at him to get off of her. She made two different reports, not just one. And in the second one, she said that he had been complimenting her on her quote unquote musk and talking to her about how he wanted a girlfriend and was she single and he was divorced. Walmart knew all of this. And their response to this was to transfer that man to the night shift. Now, what does that mean? Walmart transferred Daniel Watson from the day shift to the night shift. And when they did that, Daniel Watson became the highest ranking supervisor in the store. So during the day, there's a store manager, the person running the entire store. There's also HR, as you can imagine, and a variety of administrative personnel. On the overnight shift, it's different. 10 p.m. to 7 a.m. On that night shift, Daniel Watson was the most senior person in the building. There's no HR on staff overnight, no one to monitor Daniel Watson overnight. Based on these facts alone, a jury could find that Walmart failed to exercise reasonable care. A reasonable jury could say it is not reasonable to take a man that we know to be a sexual harasser and make him a supervisor on the overnight shift where he will have no supervision, no oversight, and not even really anyone nearby to watch what he's doing. Based on this fact alone, a reasonable jury could say that is not reasonable care. There was something I saw, I don't remember where it was, where he was on the third something or other, what do they call it, when you get a letter? Is that correct? Yes, Judge. There's an indication that Daniel Watson was on a third written coaching. According to Walmart's own policy, someone gets one written coaching, two, three, and on a fourth incident is to be terminated. Daniel Watson was on his third written coaching when Tristana Hunt complained about him. As a result, a reasonable jury could find that he should have been fired. A jury wouldn't have to make that up out of thin air. They would find it in Walmart's own policies, which say that someone who's on their third written coaching should be fired. That didn't happen. Was that raised in her complaint about the third, that process, the third, what do you call it, coaching? The third written coaching. Third written coaching. Is that something that she raised, he should have been fired because of that? Yes, I believe it's in her answers to interrogatories. You're in your rebuttal time. Did you want to reserve some? Oh yes, thank you. Thank you. Thank you, Ms. Herrera. We'll now hear from Ms. Jones. May it please the court. Good morning, your honors. Jennifer Jones on behalf of Walmart. As a preliminary matter, we are asking this court to affirm the district court's decision in its entirety. Ms. Hunt has failed to establish a genuine issue of material fact that there is any basis for employer liability on her claim of sexual harassment. We are not here to debate whether Mr. Watson's conduct amounted to a hostile work environment. Rather, Ms. Hunt has failed to establish that Walmart is vicariously liable for her supervisor's conduct. There is, as a preliminary matter, Ms. Hunt has failed to establish that she was constructively discharged or that she suffered any adverse employment action so as to preclude Walmart from raising the Farragher-Ellerth defense. And we'd ask this court to remember that the standard for establishing a constructive discharge is higher than that of a hostile work environment standard. Ms. Hunt does apparently waive that in her brief, but we note this for the court. Ms. Jones, does the records show what Walmart did up front to originally train Mr. Watson when he first began working? Yes. All Walmart employees undergo numerous trainings. That's in the record. Mr. Watson and Ms. Hunt were both trained on Walmart's reporting policy. It's in writing. As a store associate, Ms. Hunt herself was fully aware and signed off on the policy at her time of hire and then received several trainings thereafter over the course of her years working with Note that in this case, getting to the issue of reasonableness that Ms. Herrera has raised, Walmart unquestionably meets the elements of the Farragher-Ellerth defense. Walmart exercised reasonable care to prevent and correct harassment. Not only did it have this reporting policy that I just mentioned, but Ms. Hunt did not use that reporting policy. When she came to Walmart in September 2013, and the court should note that this occurred on the same day that she was written up for being tardy, one of her many tardies, which she did not contest. When she came in September to complain, she reported incidents that dated back to June 2013, several months earlier. At no point in time did she report those incidents. In addition, those incidents were limited to verbal comments. There were no allegations of touching whatsoever. Ms. Hunt, in her deposition and in her written complaint to Walmart, establishes that her complaint at that time in September was limited to several isolated verbal comments. Upon receiving that information, Walmart promptly investigated the written statement and asked whether there were any witnesses or individuals who could corroborate her statement. Ms. Hunt flippantly told Walmart management to ask around. And we are talking about a large box store with hundreds of employees, and to have an employee flippantly respond in the course of an investigation to ask around, what is Mr. Watson presented him the opportunity to contest Ms. Hunt's allegations and present his side of the story. And Mr. Watson, in fact, denied the allegations. Because Ms. Hunt had told Walmart that there was essentially nobody who could corroborate her allegations, Walmart could not substantiate Ms. Hunt's claims. In an abundance of precaution, however, Mr. Watson did not express recourse in sexual harassment. And what Ms. Hunt argues here is that this court should essentially have a two strikes and you're out rule. She relies upon a prior incident involving Mr. Watson, which she was unaware of until discovery in this matter, I would note. She was not aware of this other allegation? That is correct. That information came out to her in discovery. And essentially what she argues is because there's this prior incident, that essentially in her case, Mr. Watson should have been fired. And to apply that rule as Ms. Hunt is asking this court to do amounts to a two strikes and you're out rule, which this court already addressed in the Longstreet case. The Longstreet case says that the court needs to look at the situations at the time that the allegations are raised. When you look at the prior incident of harassment that Ms. Hunt refers to, the Campbell incident, the employer acted reasonably under those circumstances. It issued Mr. Watson, after an investigation, a second level warning. It separated him from the employee who he had made inappropriate comments to and that employee never complained again. So in effect... Campbell? Yes, correct. So what did they do? Different shifts or something? They moved him to another shift. Was that when he got moved to the night shift? Yes. Because of Campbell? Because of Campbell. He was separated from Ms. Campbell in addition to being issued a written warning and she never complained again. So in effect, Walmart acted reasonably and it promptly corrected and addressed the problem. Was everything that occurred with Hunt at that night shift? Yes. Ms. Hunt worked the night shift. And that's when he got transferred in there that whatever his encounters were with Hunt. Correct. That is when, I believe, when Ms. Hunt and Mr. Watson first met. But going to Ms. Hunt's claims, Walmart acted reasonably and in fact, again, corrected the harassment because Ms. Hunt never complained again after the September 2013 investigation. So Walmart promptly investigates her complaint. Even though they can't substantiate her allegations, they refer Mr. Watson to us again. So in Campbell's case, Walmart did react to that? Correct. In both cases, Walmart reacted to it. And it is our position that in both cases, Walmart reacted appropriately and reasonably based on the allegations at the time they were raised. And because Ms. Hunt cannot show that Walmart failed to correct and prevent further harassment from Mr. Watson, she points to a subsequent employee, Ms. Hawkins. The problem with Ms. Hawkins' complaint is that this is not Ms. Hawkins' case. This is Ms. Hunt's case. And Ms. Hunt would need to establish that Walmart failed to correct and prevent the harassment at the time her allegations were raised. That is not the case here. Walmart acted reasonably and in fact, prevented and corrected the alleged harassment, notwithstanding that it could not substantiate those claims. Furthermore, even if this court were to find that the employer acted unreasonably, we would note that Hunt herself acted unreasonably. As I mentioned earlier, Ms. Hunt was fully aware of Walmart's harassment policy. She waited until September 2013, excuse me, to raise any allegations against Mr. Watson when these incidents had allegedly occurred months earlier. And the record establishes no facts whatsoever to explain why Ms. Hunt would wait to report those incidents. Ms. Hunt alleges that she feared retaliation, but unlike many of the cases cited by Ms. Hunt in her brief, there are no actual instances of employees being retaliated against for complaining of sex harassment. So there's no reasonable basis for Ms. Hunt to claim, there's no facts to support her claim that she feared retaliation. Ultimately, this is a straightforward case. We believe that the district court properly concluded that Walmart clearly established that it meets both prongs of the Farragher-Ellert defense, both that it acted reasonably in response to Ms. Hunt's allegations at the time they were raised to prevent and correct the harassment, and also that Ms. Hunt acted unreasonably in failing to promptly report her alleged harassment. Therefore, we ask that you affirm the district court's ruling. Thank you, Ms. Jones. Ms. Herrera, rebuttal. Your Honors, Walmart has it backwards. Hunt does not have to prove that Walmart did not have a system in place. That is not the standard. Walmart bears the burden in the affirmative defense of proving that it had a system in place to prevent and correct harassment, but they believe that Walmart has proven that under all the facts of this case. A reasonable jury could say that Walmart's behavior was unreasonable in transferring a sexually harassing man to the night shift to have a better opportunity to be alone with no supervision. And let's talk a little bit about the Ellert defense. The first element is that the employer exercised reasonable care to prevent and correct promptly any sexual harassment. And I'm asking this, I don't know the answer to it. Is that first element limited to this employer and supervisor, or employee and supervisor, or is it in general? It's in general. The language of the case says that the employer must exercise reasonable care to prevent and correct promptly any harassment. The purpose of Title VII is not for plaintiffs to be able to come to court and win money for it having happened to them. The purpose of Title VII is to prevent it. A jury could very easily find that a situation where a company takes a harasser and transfers him to an overnight shift where he has less supervision is unreasonable. And if the jury finds that, then the affirmative defense is not proven. Importantly, he went on to do it again. So this is a man with at least three documented instances in just about a year of committing sex discrimination in employment by sexually harassing women. After he sexually harassed Rosanna Hunt and she reported him, he went on to do it again. She overheard him speaking to Chantal Hawkins about her breasts and what he would like to do to them. Chantal Hawkins herself submitted a written report where she said that Daniel Watson called her a bitch, told her that he could train her to be quiet. And this was overheard by multiple people. After this event with Chantal Hawkins, he still was not terminated and went on to be employed for many months, if not years thereafter. Under the facts of all of these instances, or any of them, a jury could find that Walmart's behavior was unreasonable. Thank you, Ms. Arroyo. Thank you. We ask that you reverse and remand this case for trial. Thank you. Thank you. The case will be taken to our advisement.